JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PETER NOTEMAN

## DEFENDANTS

ZURICH AMERICAN INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff  Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Cook
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §12101, et seq. ("ADA"); 42. U.S.C. §2000e, et. seq. ("Title VII"); 29 U.S.C. §2601, et seq. ("FMLA"); 43 P.S. §951, et seq. ("PHRA")

Brief description of cause:
Plaintiff was discriminated against because of his disability.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
November 3, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Schaumburg, IL 60196_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?          Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| PETER NOTEMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ZURICH AMERICAN INSURANCE COMPANY | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.               (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                        (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                           (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| November 3, 2025 | | Plaintiff, Peter Noteman |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2859 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| PETER NOTEMAN<br>Glenn Mills, PA 19342<br>　　　　　　　Plaintiff,<br>　　　v.<br><br>ZURICH AMERICAN INSURANCE<br>COMPANY<br>1299 Zurich Way<br>Schaumburg, IL 60196<br><br>　　　　　　　Defendant. | CIVIL ACTION NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## I.   INTRODUCTION

Plaintiff, Peter Noteman ("Plaintiff"), brings this action against Defendant, Zurich American Insurance Company ("Defendant"), pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, as amended 43 P.S. §951, *et seq.* ("PHRA").  Plaintiff seeks all relief available under the foregoing statutes including without limitation: equitable relief, back-pay, front-pay, compensatory damages for his pain and suffering, liquidated damages, punitive damages and his attorneys' fees and costs.

## II.   PARTIES

1.      Plaintiff resides in Glenn Mills, PA 19342.

2.      Defendant, Zurich American Insurance Company, is an Illinois corporation with a principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196.

1

3. Defendant is the US-based, wholly owned subsidiary of Swiss parent-company Zurich Insurance Group.

4. Zurich Insurance Group conducts US operations through Defendant.

5. Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

6. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7. At all times material hereto, Defendant was an "employer(s)" within the meaning of the statutes which form the basis of this matter.

8. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the statutes which form the basis of this matter.

9. At all times material hereto, Plaintiff worked out of his Pennsylvania-based home office.

## III. <u>JURISDICTION AND VENUE</u>

10. The causes of action which form the basis of this matter arise under the ADA, Title VII, the FMLA and the PHRA.

11. The District Court has jurisdiction over Counts I (ADA), II (Title VII) and III (FMLA) pursuant to 28 U.S.C. §1331.

12. The District Court has jurisdiction over all Counts I-V pursuant to U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars

($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Illinois.

13.     Venue is proper in this District Court under 28 U.S.C. §1391(b).

14.     On or about February 5, 2024, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and crossed-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the Complaint (with personal identifying information redacted).

15.     On or about August 6, 2025, the EEOC issued to Plaintiff a Notice of Right to Sue for the above Complaint. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for commencement of this action.

## IV.    <u>FACTUAL ALLEGATIONS</u>

17.     Plaintiff began working at Defendant on or about July 14, 2003, as Underwriter.

18.     Amid exemplary performance, Plaintiff was promoted approximately six (6) times by Defendant.

19.     In or about April, 2021, Plaintiff was Technical Director-Liability ("TDL").

20.     As TDL, Plaintiff was responsible for the oversight of risk, underwriting strategy, and performance of the Defendant's Liability Insurance portfolios in North America.

21.     As TDL, Plaintiff reported to Defendant's Chief Underwriting Officer ("CUO").

22.	In or about February, 2023, Defendant rated Plaintiff's most recent annual performance as "Fully Met-High Performance."

23.	In or about April 3, 2023, Heather Fox ("Fox") became North American CUO and Plaintiff's supervisor.

24.	Fox reported to Kristof Terryn ("Terryn"), North American Chief Executive Officer and Group Chief Operations Officer.

25.	Terryn reported to Mario Greco ("Grecco"), Group Chief Executive Officer.

26.	On or about May 5, 2023, Lisa Williams ("Williams") Global Head of Casualty, encouraged Plaintiff to apply for the soon-to-be-posted Global Head of Liability position.

27.	Williams told Plaintiff the Global Head of Liability position would report to her.

28.	Williams told Plaintiff that he had been identified as her primary successor.

29.	The hiring manager for the Global Head of Liability position was Williams.

30.	On or about May 13, 2023, Plaintiff applied for the posted Global Head of Liability position.

31.	Plaintiff was qualified for the position.

32.	On or about June 14, 2023, Plaintiff interviewed with Scott Toland ("Tolland") Europe, Middle East, and Africa Chief Underwriting Officer, and Tom Thornberry ("Thornberry") Global Head of Specialties Claims, for the Global Head of Liability position.

33.	On or about June 19, 2023, Plaintiff interviewed with Williams for the Global Head of Liability position.

34.	On or about July 21, 2023, in a phone call with Williams, Defendant offered Plaintiff the Global Head of Liability position.

4

35.     While making the offer, Williams stated that she would get back to Plaintiff with the compensation package details.

36.     Williams statement to Plaintiff followed discussions with Plaintiff regarding differences in the pay scales between US-based positions and Europe-based positions within Defendant's organization.

37.     At the time Williams made the offer to Plaintiff and promised to get back to Plaintiff with final compensation details, Williams had already confirmed that she had taken steps to garner approval for higher compensation in the new position to be able to offer the position to Plaintiff.

38.     Williams further shared that the total compensation may not be what Plaintiff was "hoping" it would be.

39.     In response, Plaintiff stated that he was very interested in the position and that given the steps already taken to address compensation concerns, he was confident that compensation would not be any impediment to him taking the position.

40.     At the conclusion of the call, Plaintiff told Williams that his wife was pregnant, and that he planned to take paternity/FMLA leave.

41.     Plaintiff stated that the paternity/FMLA leave could impact his relocation schedule.

42.     The promoted position required that Plaintiff move to Switzerland.

43.     Plaintiff concluded the call by saying that he would further share the timing of the baby's arrival, his paternity/FMLA leave and propose a schedule for relocation.

5

44.     On or about July 21, 2023, in a video call with Joann Bronson ("Bronson"), Head of Technical Underwriting Services, she asked Plaintiff if he was okay and if something was going on with him.

45.     She stated that someone had shared a concern with her regarding how they had observed Plaintiff in a meeting, and she wanted to see how Plaintiff was doing.

46.     Plaintiff stated that he was overdue for a promotion, and that he was hoping that he would be selected for the promotion to Global Head of Liability.

47.     Defendant was aware that Plaintiff had been diagnosed with bipolar disorder and depression.

48.     On or about July 28, 2023, in a meeting with Fox, Plaintiff stated that his wife was pregnant, and he planned to take six (6) weeks of paternity/FMLA leave in or around January 2024.

49.     Plaintiff told Fox that, in the coming weeks, Plaintiff would be taking off a few days to attend doctor's appointments with his wife in connection with her pregnancy.

50.     Plaintiff further shared that he was offered and would accept a promotion to the Global Head of Liability position.

51.     After disclosing that he planned paternity/FMLA leave, Fox treated Plaintiff differently and worse, and in a more hostile and dismissive manner.

52.     Plaintiff's performance was unjustly criticized.

53.     Plaintiff was piled on with work that was difficult to complete in the timeframe provided.

54.     Expectations for Plaintiff changed.

6

55.    Plaintiff was held to a more stringent standard.

56.    On or about August 1, 2023, in a meeting with Williams, Plaintiff proposed relocating for the Global Head of Liability position on September 15, 2023, without his wife, returning to the United States to be with his wife as she gave birth and recovered from her C-section, and taking six (6) weeks of paternity/FMLA leave beginning on January 5, 2024.

57.    Plaintiff committed to having his family and him fully relocated to Switzerland by March 1, 2024.

58.    Williams stated that Plaintiff's proposed relocation schedule seemed fine, as Defendant gave her one (1) year to relocate to Switzerland.

59.    Williams did not say anything during the meeting that suggested Plaintiff's promotion was in jeopardy.

60.    On or about August 9, 2023, in a phone call with Chris Parkinson ("Parkinson"), Senior Talent Acquisition Consultant, Plaintiff discussed his proposed relocation schedule for the Global Head of Liability position and his planned paternity/FMLA leave in January 2024.

61.    Parkinson stated that his new position and relocation seemed like a lot to take on with a pregnant wife and a baby on the way and asked if Plaintiff was sure he wanted "to be doing this."

62.    Plaintiff responded that he was sure he wanted the role and was very excited to be taking the position.

63.    On August 14, 2023, in an email from Williams, she stated that she had the contract for the Global Head of Liability position and outlined the compensation and relocation details.

64.    That same day, Plaintiff accepted the position during a phone call with Williams.

7

65.    Later that same day, in a video call with Bronson, Plaintiff stated that his wife was pregnant, and he planned to take six (6) weeks of paternity/FMLA leave in January 2024.

66.    Plaintiff stated that he had taken off a few days recently to attend doctor's appointments with his wife in connection with her pregnancy.

67.    Plaintiff shared with Bronson that he had informed Fox of his need for time off for pregnancy related medical appointments in advance of his days away.

68.    Plaintiff shared with Bronson that Fox had disrespected his requests, requiring that he work at least part of those days and otherwise interfering with his ability to take a limited number of days off to attend necessary medical appointments with his wife related to her pregnancy.

69.    Plaintiff complained to Bronson that Fox had been treating him worse since he disclosed his paternity/FMLA leave plans to her.

70.    On or about August 15, 2023, in a phone call with Fox, she unjustly criticized Plaintiff's performance, stated that she did not know what Plaintiff was working on, and stated that he did not get to "coast" simply because he was taking a new position.

71.    On or about August 17, 2023, in a phone call with Parkinson, Defendant told Plaintiff that his proposed relocation schedule, due to his planned paternity/FMLA leave, may not work out, as it complicated his work visa in Switzerland for the Global Head of Liability position.

72.    The next day, on or about August 18, 2023, in a phone call with Parkinson, Plaintiff and Parkinson worked to finalize and agree upon a relocation schedule for Plaintiff.

73.    The meeting with Parkinson ended with agreement on the relocation schedule.

74.     Later that same day, on or about August 18, 2023, during a phone call with Williams, Defendant revoked its accepted offer to Plaintiff of the Global Head of Liability position.

75.     Defendant failed to promote Plaintiff.

76.     The stated reason for Defendant's failure to promote Plaintiff was performance.

77.     Williams told Plaintiff that Fox had stated that his performance had been deteriorating over the last two (2) weeks and, based on everything that was going on, Defendant could not bring Plaintiff to Switzerland.

78.     Plaintiff asked Williams, who was very familiar with Plaintiff's history of strong performance at Defendant, if it sounded like Plaintiff to have performance issues.

79.     She stated that it did not.

80.     Plaintiff stated that within the last two (2) weeks, Plaintiff told Fox that his wife was pregnant and that he intended to take paternity/FMLA leave, and that he was out of work for a few days to attend doctor's appointments with his wife in connection with pregnancy.

81.     Plaintiff stated that Fox had been treating him worse since Plaintiff informed her that he would be taking paternity/FMLA leave.

82.     Plaintiff stated that he badly wanted this promotion and to work for Williams.

83.     Williams stated that she was sorry and that there was nothing that she could do.

84.     The Global Head of Liability position remained open.

85.     Defendant failed to promote Plaintiff to the Global Head of Liability position because of his disability and/or his sex and/or his anticipated paternity/FMLA leave and/or because he engaged in protected activity.

9

86. Defendant's stated reason for failing to promote Plaintiff, poor performance, is false and pre-textual.

87. On or about August 18, 2023, in a phone call with a male employee at Defendant's Ethics and Compliance Hotline, Plaintiff complained about how Fox treated him after he disclosed his planned paternity/FMLA leave due to his wife's pregnancy, including her performance criticisms of Plaintiff, which Plaintiff was told was the reason for Defendant rescinding his promotion.

88. Following the above, in messages exchanged with Susan Gordon, Vice President, Head of Casualty Underwriting, she asked Plaintiff if he was okay, and Plaintiff said no.

89. He stated that the promotion offer had been rescinded.

90. Plaintiff communicated how upset he was about the same.

91. Later on August 18, 2023, following the above, in a phone call with Al Crook (male), Head of Human Resources Business Partners, Plaintiff complained about discrimination by Fox based on his anticipated paternity/FMLA leave, including how Fox treated him after he disclosed his planned paternity/FMLA leave due to his wife's pregnancy and the rescinding of his promotion.

92. On August 21, 2023, Plaintiff was diagnosed with Major Depression, Panic Disorder, and Generalized Anxiety Disorder.

93. On August 22, 2023, in a video call with Fox, when she asked Plaintiff how he was, Plaintiff stated: not good.

94. On August 23, 2023, in a meeting with Pam Willis ("Willis"), Human Resources, Plaintiff complained about discrimination by Fox based on his anticipated paternity/FMLA leave,

10

including how Fox treated him after he disclosed his planned paternity/FMLA leave due to his wife's pregnancy and the rescinding of his promotion.

95.    Plaintiff told Willis that the situation was extremely upsetting to him.

96.    Willis told Plaintiff that she was investigating Plaintiff's complaints.

97.    Willis also told Plaintiff that there was an Employee Assistance Program if he needed it.

98.    On August 25, 2023, in an email to Fox, copying Terryn and Crook, Plaintiff stated that he had made a complaint of discrimination about her to Human Resources based on how she treated him after he disclosed his planned paternity/FMLA leave due to his wife's pregnancy and the rescinding of his promotion.

99.    On August 28, 2023, in a phone call with Willis, she reprimanded Plaintiff for sending the above email to Fox and told Plaintiff that sending the email was inappropriate and unprofessional.

100.    On September 6, 2023, Plaintiff told Fox that he needed to leave work early for an appointment.

101.    In response, Fox messaged Plaintiff and told him it was "more than unfortunate that [Plaintiff was] stepping away for an appointment while [she was] still scrambling to get this deck completed."

102.    On September 7, 2023, in a video call with Hatice Dinc ("Dinc"), Human Resources Business Partner, Plaintiff communicated that he was extremely upset.

103.    On September 7, 2023, in a video call with Willis, Plaintiff complained of retaliation based on his discrimination complaints.

11

104.    Plaintiff stated that Fox' treatment of him was worsening and provided examples.

105.    On September 8, 2023, in a message to Fox, Plaintiff complained of retaliation in connection with how she was treating him and stated that it seemed that she was ignoring his legal rights and need for treatment.

106.    Later that same day, following the above, in a video call with Willis, she reprimanded Plaintiff for sending the above message to Fox and told him that it was inappropriate.

107.    Subsequently, later on September 8, 2023, Plaintiff asked Kathy Leboyer, Human Resources, about the Employment Assistance Program.

108.    On September 12, 2023, Plaintiff told Willis that, as of the next day, Plaintiff would be out of work on a short-term disability, medical leave of absence.

109.    Plaintiff's request for medical leave was a request for reasonable accommodation(s) for his disability.

110.    On September 13, 2023, Plaintiff went out of work on an approved FMLA leave of absence.

111.    From September 13 through November 20, 2023, Plaintiff was out of work on an approved FMLA leave of absence.

112.    During his FMLA leave, Plaintiff's treating provider(s) provided medical documentation to Defendant through its leave administrator to support his on-going need for medical leave.

113.    On September 21, 2023, Plaintiff's doctor submitted his Treating Provider Statement to Defendant's third-party administrator in connection with his disability and medical leave.

12

114.    The Treating Provider Statement stated that his primary disabling diagnosis was Major Depression, that Plaintiff was having recurrent panic attacks, and that Plaintiff had a very anxious affect.

115.    On September 25, 2023, Plaintiff's doctor submitted his Treating Provider Statement to Defendant's third-party administrator in connection with his disability and medical leave.

116.    The September 25th Treating Provider Statement stated that primary disabling diagnosis was panic disorder, that his secondary disabling diagnosis was Generalized Anxiety Disorder, and that Plaintiff appeared profoundly worried and anxious with multiple daily panic attacks.

117.    On September 29, 2023, Defendant hired Tobias Cushing ("Cushing"), into a newly created Head of Motor position.

118.    From September 22 to October 16, 2023, Plaintiff was in Arizona for mental health treatment at a wellness facility.

119.    On or about October 9, 2023, in a phone call with Michelle Fesi, Technical Director, Special Lines, Plaintiff told her that he was in Arizona for mental health treatment for major depression and panic attacks

120.    On November 21, 2023, Plaintiff returned to work from his approved FMLA medical leave of absence.

121.    Upon Plaintiff's return to work from his medical leave of absence, Plaintiff was treated differently (in a negative manner), and in a more hostile and dismissive manner.

122.    Plaintiff was ignored.

13

123. Plaintiff was excluded from meetings and communications related to his job duties.

124. A portion of Plaintiff job duties and responsibilities were removed from him and assigned to Cushing.

125. On November 21, 2023, in a meeting with Willis, Willis shared that in her investigation into Plaintiff complaints, she found no policy violations.

126. Willis did confirm that Fox was aware of his wife's pregnancy and his anticipated paternity/FMLA leave.

127. Willis unjustly criticized Plaintiff's performance.

128. Plaintiff did not receive any investigative report, summary, or written conclusion regarding the investigation into his discrimination and retaliation complaints.

129. On November 27, 2023, in a meeting with Fox and Jon Dahlborg, Head of Human Resources, Employee Relations, Defendant terminated Plaintiff's employment, effective December 10, 2023.

130. The stated reason was poor performance.

131. Fox stated that Plaintiff had become non-responsive and that she lost confidence in him.

132. The stated reason for Plaintiff's termination is false and pre-textual.

133. Defendant terminated Plaintiff's employment because of his disability and/or his sex(based on his wife's pregnancy) and/or his seeking reasonable accommodations for his disability, including his taking a medical leave of absence for his disability, and/or his anticipated paternity/FMLA leave, and/or because of his complaints of discrimination and retaliation.

14

134.    After more than twenty (20) years of service, Plaintiff was terminated within six (6) days of returning from an FMLA protected leave of absence for his disability.

135.    After more than twenty (20) years of service, Plaintiff was terminated within four (4) months of disclosing his planned paternity/FMLA leave.

136.    Plaintiff was the only employee reporting to Fox who was terminated effective December 10, 2023.

137.    To the best of his knowledge, Plaintiff was the only disabled employee reporting to Fox.

138.    To the best of his knowledge, Plaintiff was the only employee reporting to Fox who had engaged in protected activity.

139.    To the best of his knowledge, Plaintiff was the only employee reporting to Fox who had requested reasonable accommodation for a disability, including having taken an FMLA-protected medical leave of absence for a disability.

140.    Plaintiff was the only employee reporting to Fox who anticipated taking paternity/FMLA leave.

141.    Defendant assigned Plaintiff job duties and responsibilities to nondisabled and/or employees who were not anticipating taking paternity/FMLA leave and/or non-complaining employees and/or employees who did not seek reasonable accommodations for a disability, including a medical leave of absence, including Cushing and Joe McLean, Interim Director of General Liability and Excess.

142.    Plaintiff was more qualified to perform his job duties and responsibilities than the employees who assumed his job responsibilities.

15

143. Defendant's comments and conduct evidence a bias against disabled employees and/or male employees who take paternity/FMLA leave and/or employees who seek reasonable accommodations for a disability, including a medical leave of absence.

144. Plaintiff's sex/his wife's pregnancy/his anticipated paternity leave was a motivating and/or determinative factor in Defendant's discriminatory treatment of him.

145. Plaintiff's requests for reasonable accommodation(s), including in connection with requesting medical leave, were a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff.

146. In terminating Plaintiff, Defendant failed to accommodate Plaintiff's requests for reasonable accommodation(s).

147. Defendants failed to engage in the interactive process with Plaintiff.

148. Plaintiff's disability, including being regarded as, was a motivating and/or determinative factor in Defendant's discriminatory treatment of him.

149. Defendant retaliated against Plaintiff for taking FMLA leave.

150. Defendant interfered with Plaintiff's FMLA rights.

151. Plaintiff's complaints of discrimination/and or retaliation were (a) motivating and/or determinative factor(s) in Defendant's retaliatory treatment of Plaintiff.

152. The retaliatory actions taken against Plaintiff after he complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

153. Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

16

154. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

155. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

### COUNT I—ADA

156. Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

157. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADA.

158. Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

159. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

160. Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## COUNT II—TITLE VII

161.    Plaintiff incorporates herein by reference the above paragraphs, as if set forth herein in their entirety.

162.    By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated Title VII.

163.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

164.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

165.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT III-FMLA

166.    Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

167.    By committing the foregoing acts against Plaintiff, Defendant has violated the FMLA.

168.    Defendant's conduct was retaliatory.

169.    Defendants' conduct interfered with his rights to FMLA.

170.    Said violations were willful, not in good faith and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

171.    The imposition of liquidated damages is warranted.

18

172.    As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

173.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violations of the FMLA unless this Court grants the relief requested herein.

## COUNT IV-PHRA

174.    Plaintiff incorporates herein by reference the above paragraphs as if forth herein in their entirety.

175.    Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

176.    Said violations were intentional and willful.

177.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

178.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of the Defendant's discriminatory acts unless and until the Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

19

(a) declaring the acts and practices complained of herein to be in violation of the ADA;

(b) declaring the acts and practices complained of herein to be in violation of Title VII;

(c) declaring the acts and practices complained of herein to be in violation of the FMLA;

(d) declaring the acts and practices complained of herein to be in violation of the PHRA;

(e) enjoining and permanently restraining the violations alleged herein;

(f) entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(g) awarding compensatory damages to make the Plaintiff whole for all lost earnings, including without limitation bonus payments, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(h) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i) awarding liquidated damages to Plaintiff;

(j) awarding punitive damages to Plaintiff;

(k) awarding Plaintiff other such damages as are appropriate under, the ADA, Title VII, the FMLA and, the PHRA;

(l)  awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

20

(m) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Dated: November 3, 2025                    By:    ~Katherine C. Oeltjen~ (signature)

Katherine C. Oeltjen, Esquire (318037)
CONSOLE MATTIACCI LAW, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676

*Attorneys for Plaintiff*

21

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | | |
|---|---|---|
| COMPLAINANT: | : | |
| | : | |
| **PETER NOTEMAN** | : | Docket No. |
| | : | |
| v. | : | |
| | : | |
| RESPONDENTS: | : | |
| | : | |
| **ZURICH AMERICAN INSURANCE COMPANY** | : | |
| | : | |

1.  The Complainant herein is:

   Name:       Peter Noteman

   Address:    REDACTED
               Glenn Mills, PA 19432

2.  The Respondents herein are:

   Name:       Zurich American Insurance Company

   Address:    1299 Zurich Way
               Schaumburg, IL 60196

3.  I, Peter Noteman, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and sex (male) and retaliation for seeking reasonable accommodations for my disability, as set forth below.

### Discrimination and Retaliation

   **A.  I specifically allege:**

   [1]       I began working at Respondent's predecessor on or about July 14, 2003.

   [2]       I consistently performed my job duties in a highly competent manner.

[3]        I worked out of my home office in Pennsylvania.

[4]        I last held the position of Technical Director, Liability.

[5]        I last reported to Heather Fox (female), North American Chief Underwriting Officer.  Fox reported to Kristof Terryn (male), North American Chief Executive Officer and Group Chief Operations Officer.  Terryn reported to Mario Greco (male), Group Chief Executive Officer.

[6]        In or about February 2023, I received a Fully Met – High performance review rating.

[7]        On April 3, 2023, I began reporting to Fox.

[8]        Fox had no role in my being hired at Respondent.

[9]        On May 5, 2023, Lisa Williams (female), Global Head of Casualty, encouraged me to apply for the soon-to-be-posted Global Head of Casualty position, which would report to her, and told me that I was identified as her primary successor.

[10]        The hiring manager for the Global Head of Liability position was Williams.

[11]        On May 13, 2023, I applied for the posted Global Head of Liability position.  I was qualified for the position.

[12]        On June 14, 2023, I interviewed with Scott Toland (male), Europe, Middle East, and Africa Chief Underwriting Officer, and Tom Thornberry (male), Global Head of Specialities Claims, for the Global Head of Liability position.

[13]        On June 19, 2023, I interviewed with Williams for the Global Head of Liability position.

[14]    On July 21, 2023, in a phone call with Williams, Respondent offered me the Global Head of Liability position.  Williams stated that she would get back to me with the compensation package details, but it may not be what I was hoping it would be.  I stated that I was very interested in the position.  I told Williams that my wife was pregnant, and that I planned to take paternity/FMLA leave.  I stated that the paternity/FMLA leave may impact my relocation schedule, as the position required me to move to Switzerland, but I would discuss the timing of everything and propose a schedule for the relocation.

[15]    On or about July 21, 2023, in a video call with Joann Bronson (female), Head of Technical Underwriting Services, she asked me if I was okay and if something was going on with me. She stated that someone had shared a concern with her regarding how they had observed me in a meeting, and she wanted to see how I was doing. I stated that I was overdue for a promotion, and that I was hoping that I would be selected for the promotion to Global Head of Liability.

[16]    Respondent was aware that I had been diagnosed with bipolar disorder and depression.

[17]    On July 28, 2023, in a meeting with Fox, I stated that my wife was pregnant, and I planned to take six (6) weeks of paternity/FMLA leave in January 2024.  I stated that, in the coming weeks, I would be taking off a few days to attend doctor's appointments with my wife in connection with her pregnancy.  I stated that I was offered and had accepted a promotion to the Global Head of Liability position.

[18]    After disclosing my planned paternity/FMLA leave, Fox treated me differently and worse, and in a more hostile and dismissive manner.

[19]    My performance was unjustly criticized.

[20]   I was piled on with work that was difficult to complete in the timeframe provided.

[21]   Expectations for me changed.

[22]   I was held to a more stringent standard.

[23]   On or about August 1, 2023, in a meeting with Williams, I proposed relocating for the Global Head of Liability position on September 15, 2023, without my wife, returning to the United States to be with my wife as she gave birth and recovered from her C-section, and taking six (6) weeks of paternity/FMLA leave beginning on January 5, 2024.   I committed to having my family and me fully relocated to Switzerland by March 1, 2024. Williams stated that my proposed relocation schedule seemed fine, as Respondents gave her one (1) year to relocate to Switzerland.

[24]   On August 9, 2023, in a phone call with Chris Parkinson (male), Senior Talent Acquisition Consultant, I discussed my proposed relocation schedule for the Global Head of Liability position and my planned paternity/FMLA leave in January 2024.  Parkinson stated that my new position and relocation seemed like a lot to take on with a pregnant wife and a baby on the way, and asked if I was sure I wanted to be doing this.

[25]   On August 14, 2023, in an email from Williams, she stated that she had the contract for the Global Head of Liability position, and outlined the compensation and relocation details.

[26]    On August 14, 2023, following the above, in a phone call with Williams, I accepted the Global Head of Liability position.

[27]   On August 14, 2023, in a video call with Bronson, I stated that my wife was pregnant, and I planned to take six (6) weeks of paternity/FMLA leave in January 2024.  I

stated that I had taken off a few days recently to attend doctor's appointments with my wife in connection with her pregnancy.  I complained that Fox had been treating me worse since I disclosed my paternity/FMLA leave plans to her.

[28]     On August 15, 2023, in a phone call with Fox, she unjustly criticized my performance, stated that she did not know what I was working on, and stated that I did not get to "coast" simply because I was taking a new position.

[29]     On August 17, 2023, in a phone call with Parkinson, he told me that my proposed relocation schedule, due to my planned paternity/FMLA leave, may not work out, as it complicated my work visa in Switzerland for the Global Head of Liability position.

[30]     On August 18, 2023, in a phone call with Parkinson, we agreed on a relocation schedule for my move to Switzerland and promotion to the Global Head of Liability position.

[31]     On August 18, 2023, following the above, in a phone call with Williams, Respondent revoked its offer that I had accepted, and Respondent failed to promote me to the Global Head of Liability position.  The stated reason was my performance.  Williams told me that Fox had stated that my performance had been deteriorating over the last two (2) weeks and, based on everything that was going on, Respondent could not bring me to Switzerland.  I asked Williams if it sounded like me to have performance issues.  She stated that it did not.  I stated that within the last two (2) weeks, I told Fox that my wife was pregnant and that I intended to take paternity/FMLA leave, and that I was out of work for a few days to attend doctor's appointments with my wife in connection with pregnancy.  I stated that Fox had been treating me worse since I informed her that I would be taking paternity/FMLA leave.  I stated that I badly

wanted this promotion and to work for Williams.  Williams stated that she was sorry and that there was nothing that she could do.

[32]	The Global Head of Liability position remains open.

[33]	Respondents failed to promote me to the Global Head of Liability position because of my disability and/or my sex and/or my anticipated paternity/FMLA leave.

[34]	On August 18, 2023, following the above, in a phone call with _____ (male), Ethics and Compliance Hotline, I complained about how Fox treated me after I disclosed my planned paternity/FMLA leave due to my wife's pregnancy, including her performance criticisms of me, which I was told was the reason for Respondent rescinding my promotion.

[35]	On August 18, 2023, following the above, in messages exchanged with Susan Gordon, Vice President, Head of Casualty Underwriting, she asked me if I was okay, and I said no.  I stated that the promotion offer had been rescinded.  I communicated how upset I was about the same.

[36]	On August 18, 2023, following the above, in a phone call with Al Crook (male), Head of Human Resources Business Partners, I complained about discrimination by Fox based on my anticipated paternity/FMLA leave, including how Fox treated me after I disclosed my planned paternity/FMLA leave due to my wife's pregnancy and the rescinding of my promotion.

[37]	On August 21, 2023, I was diagnosed with Major Depression, Panic Disorder, and Generalized Anxiety Disorder.

[38]	On August 22, 2023, in a video call with Fox, when she asked me how I was, I stated: not good.

[39]    On August 23, 2023, in a meeting with Pam Willis (female), Human Resources, I complained about discrimination by Fox based on my anticipated paternity/FMLA leave, including how Fox treated me after I disclosed my planned paternity/FMLA leave due to my wife's pregnancy and the rescinding of my promotion. I told her that the situation was extremely upsetting to me. She stated that she was investigating my complaints. She told me that there was an Employee Assistance Program if I needed it.

[40]    On August 25, 2023, in an email to Fox, copying Terryn and Crook, I stated that I had made a complaint of discrimination about her to Human Resources, based on how she treated me after I disclosed my planned paternity/FMLA leave due to my wife's pregnancy and the rescinding of my promotion.

[41]    On August 28, 2023, in a phone call with Willis, she reprimanded me for sending the above email to Fox and told me that the same was inappropriate and unprofessional.

[42]    On September 6, 2023, I told Fox that I needed to leave work early for an appointment.

[43]    On September 6, 2023, following the above, in a message from Fox, she stated that it was "more than unfortunate that [I was] stepping away for an appointment while [she was] still scrambling to get this deck completed."

[44]    On September 7, 2023, in a video call with Hatice Dinc (female), Human Resources Business Partner, when she asked me how I was, I communicated that I was extremely upset.

[45]    On September 7, 2023, in a video call with Willis, I complained of retaliation based on my discrimination complaints. I stated that Fox' treatment of me was worsening, and provided examples of the same.

[46]     On September 8, 2023, in a message to Fox, I complained of retaliation in connection with how she was treating me and stated that it seemed that she was ignoring my legal rights and need for treatment.

[47]     On September 8, 2023, following the above, in a video call with Willis, she reprimanded me for sending the above message to Fox and told me that the same was inappropriate.

[48]     On September 8, 2023, following the above, I asked Kathy Leboyer, Human Resources, about the Employment Assistance Program.

[49]     On September 12, 2023, I told Willis that, as of the next day, I would be going out of work on a short term disability, medical leave of absence.

[50]     On September 13, 2023, I went out of work on an approved FMLA leave of absence.

[51]     From September 13 through November 20, 2023, I was out of work on an approved FMLA leave of absence.

[52]     On September 21, 2023, my doctor submitted my Treating Provider Statement to Respondent's third-party administrator in connection with my disability and medical leave.  My Treating Provider Statement stated that my primary disabling diagnosis was Major Depression, that I was having recurrent panic attacks, and that I had a very anxious affect.

[53]     On September 25, 2023, my doctor submitted my Treating Provider Statement to Respondent's third-party administrator in connection with my disability and medical leave.  My Treating Provider Statement stated that primary disabling diagnosis was Panic Disorder, that my secondary disabling diagnosis was Generalized Anxiety Disorder, and that I appeared profoundly worried and anxious with multiple daily panic attacks.

[54]    On September 29, 2023, Respondents hired Tobias Cushing (male), into a newly created Head of Motor position.

[55]    From September 22 to October 16, 2023, I was in Arizona for mental health treatment at a mental health treatment facility.

[56]    On or about October 9, 2023, in a phone call with Michelle Fesi (female), Technical Director, Special Lines, I told her that I was in Arizona for mental health treatment at a mental health treatment facility for my major depression diagnosis and panic attacks.

[57]    On November 21, 2023, I returned to work from my approved FMLA medical leave of absence.

[58]    Upon my return to work from my medical leave of absence, I was treated differently and worse, and in a more hostile and dismissive manner.

[59]    I was ignored.

[60]    I was excluded from meetings and communications related to my job duties.

[61]    A portion of my job duties and responsibilities were removed from me and assigned to Cushing.

[62]    On November 21, 2023, in a meeting with Willis, she stated that, in her investigation into my complaints, she found no policy violations, but stated that Fox was aware of my wife's pregnancy and my anticipated paternity/FMLA leave.  Willis unjustly criticized my performance.

[63]    I did not receive any investigative report, summary, or written conclusion regarding the investigation into my discrimination and retaliation complaints.

[64]     On November 27, 2023, in a meeting with Fox and Jon Dahlborg (male), Head of Human Resources, Employee Relations, Respondent terminated my employment, effective December 10, 2023.  The stated reason was poor performance.  Fox stated that I had become non-responsive and that she lost confidence in me.

[65]     At the same time that I was told I was being terminated for poor performance, I was offered a release agreement in which I would be paid approximately $500,000 in exchange for a release of all claims against Respondent and an agreement to confidentiality and not to say anything negative about Respondents.  I refused to sign the severance agreement.  There was no policy that required Respondent to pay severance to employees who were legitimately terminated for poor performance.

[66]     Respondent terminated my employment because of my disability and/or my sex and/or my seeking reasonable accommodations for my disability, including my taking a medical leave of absence for my disability, and/or my anticipated paternity/FMLA leave.

[67]     After more than twenty (20) years of service, I was terminated within six (6) days of returning from an FMLA protected leave of absence for my disability.

[68]     After more than twenty (20) years of service, I was terminated within four (4) months of disclosing my planned paternity/FMLA leave.

[69]     I was the only employee reporting to Fox who was terminated effective December 10, 2023.

[70]     I was the only disabled[1] employee reporting to Fox.

[71]     I was the only employee reporting to Fox who had requested a reasonable accommodation for a disability, including having taken an FMLA-protected medical leave of absence for a disability.[2]

---

[1] References herein to an employee not having a disability are to the best of my knowledge.

[72]     I was the only employee reporting to Fox who anticipated taking a paternity/FMLA leave.

[73]     At the time of my termination, the following employees, in addition to me, reported to Fox.  I was more qualified for each of these employees' positions except for Kinkade's, Dinc's, and Blevin's positions.

     a)  Tobias Cushing (male), Head of Motor;

     b)  Mauro Garcia II (male), Technical Director, Worker's Compensation;

     c)  Lianne Bosko (female), Technical Director, Property;

     d)  Michelle Fesi (female), Technical Director, Special Lines;

     e)  Mark Way (male), Head of Sustainability, Underwriting;

     f)  Nathan Root (male), Head of Product Management;

     g)  Rosie Mucklo (female), Head of Underwriting, University;

     h)  Joann Bronson (female), Head of Technical Underwriting Services;

     i)  Hatice Dinc (female), Human Resources Business Partner;

     j)  Jennie Blevins (female), Executive Assistant to the Chief Underwriting Officer;

     k)  Kyle Kinkade (male), Chief Pricing Actuary.

[74]     I had no performance or disciplinary issues throughout my employment.

[75]     I was provided with no opportunity to remain employed with Respondent.

---

[2] References herein to an employee not having requested a reasonable accommodation for a disability or taken a medical leave of absence for a disability are to the best of my knowledge.

[76]     Respondent assigned my job duties and responsibilities to nondisabled and/or female employees and/or employees who were not anticipating taking paternity/FMLA leave and/or employees who did not seek reasonable accommodations for a disability, including a medical leave of absence, including Cushing and Joe McLean, Interim Director of General Liability and Excess.  I was more qualified to perform my job duties and responsibilities than the nondisabled employees and/or employees who were not anticipating taking paternity/FMLA leave and/or employees who did not seek reasonable accommodations for a disability, including a medical leave of absence, including Cushing and McLean, to whom my job duties and responsibilities were assigned.

[77]     Respondent's comments and conduct evidence a bias against disabled employees and/or male employees who take paternity/FMLA leave and/or employees who seek reasonable accommodations for a disability, including a medical leave of absence.

[78]     Respondent's disability and sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondent has discriminated against me because of my disability (including history of and regarded as) and my sex (male) and retaliated against me for seeking reasonable accommodations for my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

  **X**        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

               Section 5.1 Subsection(s) _____

               Section 5.2 Subsection(s) _____

               Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

  **X**        **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

2/1/24
(Date Signed)

(Signature)    Peter Noteman
REDACTED
Glenn Mills, PA 19432

# EXHIBIT 2

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:**    Peter Noteman
REDACTED
Glen Mills, PA 19342

**Re:**    Peter Noteman v. Zurich American Insurance Company
EEOC Charge Number:  17F-2024-60504

EEOC Representative and email:    State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge. The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By:  Karen McDonough  8/6/2025
Karen McDonough
Deputy District Director

cc:    For Respondent                                For Charging Party
John MacDonald Esq.                        Katherine C Oeltjen Esq.
Constangy, Brooks, Smith & Prophete, LLP    Console Mattiacci Law, LLC
100 Charles Ewing Boulevard, Suite 140      1525 Locust Street, 9th Floor
Ewing, NJ 08628                            Philadelphia, PA 19102